UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WAYNE HILLIGAS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-cv-01382-CKD<br><br><br>ORDER |

Plaintiff Robert Wayne Hilligas seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income (SSI) under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence. (ECF No. 19.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 24.) Thereafter, plaintiff filed a reply brief. (ECF No. 25.)

////

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), based on the consent of both parties. (ECF Nos. 7 and 9.)

1

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I.  BACKGROUND

Plaintiff was born on March 10, 1961, has attended some college, and last worked in May of 1997 as a landscaper.[2] (Administrative Transcript ("AT") 258, 275.) On July 2, 2014, plaintiff applied for DIB and SSI, alleging that his disability began on September 30, 1997. (AT 258–68.) Plaintiff claimed that he was disabled due to post-traumatic stress disorder; explosive anger disorder; sleep disturbances; racing thoughts; pain, numbness, and nerve damage in left hip, leg, and foot; as well as pain, chronic inflammation, capsulitis, tendonitis, and plantar fasciitis of the right foot. (AT 274.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on October 29, 2015. (AT 32–58.) The ALJ subsequently issued a decision dated November 20, 2015, determining that plaintiff had not been under a disability as defined in the Act, from September 30, 1997, through the date of the ALJ's decision. (AT 27.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 11, 2016. (AT 1–3.) Plaintiff subsequently filed this action on June 20, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly weighed medical opinions in the record; (2) whether the ALJ improperly discounted lay testimony; (3) whether the ALJ's RFC determination was without substantial evidence support; and (4) whether this case should be remanded for payment of benefits.[3]

/////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

2

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[4] Preliminarily, the ALJ determined that plaintiff meets

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the

3

the insured status of the Act through December 31, 2002. (AT 19.) At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since September 30, 1997, the alleged onset date. (Id.) At step two, the ALJ found that plaintiff "has the following severe impairments: hepatitis C, osteoarthritis of the right foot, sciatica, mild degenerative disc disease of the lumbar spine, status post hip fracture, anxiety disorder, and posttraumatic stress disorder." (Id.) However, at step three the ALJ concluded that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AT 20.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following specific limitations

> occasional lifting of 20 pounds, frequent lifting of 10 pounds, standing for six hours in an eight-hour workday, sitting for six hours in an eight-hour workday, occasional climbing, stooping, kneeling, crouching, and crawling; frequent balancing; can understand, remember, and carry out simple and detailed job instructions; can maintain concentration, persistence and pace for simple and detailed job tasks; should avoid working with the public, but can be around the public; and can interact with coworkers, but not on a team type of task.

(AT 22.) At step four, the ALJ determined that the plaintiff has no past relevant work. (AT 26.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (Id.) Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from September 30, 1997 through November 25, 2015. (AT 27.)

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

B. <u>Plaintiff's substantive challenges to the Commissioner's determinations</u>

1. *Whether the ALJ improperly weighed medical opinions in the record*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. <u>Id.</u> at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund</u>, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. <u>Lester</u>, 81 F.3d at 831.

/////

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

i.     Opinion of Keith Whitten, MD

Plaintiff argues that the ALJ erred by purportedly giving the opinion of Dr. Whitten "significant weight" but then substituting her own lay opinions for those of Dr. Whitten's, when determining plaintiff's RFC. (See ECF No. 19 at 17–19.) According to plaintiff, the ALJ improperly rejected Dr. Whitten's Global Assessment of Functioning ("GAF")[6] score and failed to provide specific and legitimate reasons for rejecting other portions of Dr. Whitten's opinion. (Id. at 17–18.)

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. See Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222–23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

Dr. Whitten performed a comprehensive psychiatric evaluation of plaintiff on January 21, 2015. (AT 370–75.) He assessed plaintiff as having a GAF of 48 (AT 374), and outlined plaintiff's mental impairments in his medical source statement:

> [Plaintiff] is able to perform detailed and complex tasks with only mild restrictions in his responsibility, judgement, and attention.
>
> He is able to work with efficiency in an independent environment[].
>
> He has moderate restrictions in his ability to accept instructions from supervisors, especially men with large statures, as these can be triggers for him to have explosive rage. This would also be a problem when it comes to interacting with the public and coworkers.

---

[6] A GAF score reflects a clinician's rating, on a continuum of mental health-illness (0-100), of a patient's overall functioning. Diagnostic and Statistical Manual of Mental Disorders, (4th Edition 1994) (DSM-IV), American Psychiatric Ass'n, pages 30–32.

> He also has some moderate social withdrawal, and this has interfered with his ability to relate to others.
>
> He is able to perform work activities on a consistent basis, but he has moderate restrictions in his ability to make social adjustments and manage changes in a routine work setting.
>
> [. . .]
>
> He is able to maintain regular attendance, but he has moderate restrictions in his ability to complete a workweek without interruption from these psychiatric symptoms.
>
> He has moderate restrictions in his ability to deal with stressors in a competitive work environment.

(AT 374–75.)

First, when rejecting Dr. Whitten's GAF score, the ALJ explained that

> Dr. Whitten assessed the claimant with a Global Assessment of Functioning (GAF) score of 48, which indicates serious symptoms or any serious impairment in social, occupational or school functioning. . . However, his GAF score is more severe than warranted by the medical evidence. The claimant does not have serious limitations caused by his severe impairments. He is cooperative with his treating physicians; he displayed intelligence during the consultative testing; and his demeanor was appropriate during the hearing.

(AT 25.) The ALJ's conclusion is supported by substantial evidence in the record. As detailed above, Dr. Whitten's own objective findings display only mild to moderate impairments in plaintiff's functioning. (See AT 373–74.) Further, various providers noted that plaintiff had been cooperative with them. (AT 373, 388, 390, 428) Dr. Whitten also explicitly reported that plaintiff "struck me as above-average intelligence," (AT 373) supporting the ALJ's conclusion that plaintiff displayed intelligence during the consultative testing. Additionally, even though LMFT Grotke is not an acceptable medical source (see below) she consistently assessed plaintiff a GAF of 51-60, representing only moderate impairment. (AT 379–82.) This serves as additional objective evidence in the record supporting the ALJ's conclusion. Thus, the ALJ provided clear and convincing reasons for rejecting Dr. Whitten's GAF score. See Lester, 81 F.3d at 830–31.

Second, the ALJ gave the remainder of Dr. Whitten's opinion "significant weight because it is consistent with the medical evidence, which indicates that the claimant has difficulty with managing his anger and interaction with others." (AT 25.) To account for the impairments

outlined by Dr. Whitten, the ALJ placed appropriate limitations in plaintiff's RFC. Specifically, the ALJ indicated that

> [plaintiff] can understand, remember, and carry out simple and detailed job instructions; can maintain concentration, persistence and pace for simple and detailed job tasks; should avoid working with the public, but can be around the public; and can interact with coworkers, but not on a team type of task.

(AT 22.)

The ALJ did not fail to provide specific and legitimate reasons for rejecting other portions of Dr. Whitten's opinion, as the plaintiff suggests. Rather, the ALJ incorporated Dr. Whitten's opinion into her RFC determination by providing these specific limitations to account for plaintiff's mental impairments, as is the ALJ's responsibility. See Vertigan, 260 F.3d at 1049. Plaintiff would have interpreted Dr. Whitten's opinion differently and crafted a different RFC, but such differences in interpretation are not adequate grounds for reversal. See Tommasetti, 533 F.3d at 1038. The ALJ performed her duty and crafted an RFC determination based upon substantial evidence that incorporated the findings of Dr. Whitten, to which she gave significant weight. See Vertigan, 260 F.3d at 1049; Turner, 613 F.3d at 1222–23. Therefore, the ALJ did not err in her consideration of Dr. Whitten's opinion.

### ii. Opinion of Linda Grotke, LMFT

Plaintiff argues that the ALJ improperly rejected the opinion of LMFT Grotke by failing to apply the factors set forth by the Social Security Administration ("SSA") in SSR 06-03p. (See ECF No. 19 at 19–22.) The SSA has clarified that opinion evidence from a licensed marriage and family therapist, such as LMFT Grotke, is classified as a non-medical "other-source." See 20 C.F.R. 404.1513(d) and 416.913(d).

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p (S.S.A. Aug. 9, 2006). The SSA has explained that the factors in 20 CFR

404.1527(d) and 416.927(d) can be applied to these other sources.[7]  Id.  However,

> [n]ot every factor for weighing opinion evidence will apply in every case.  The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case.  Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

SSR 06-03p.  Moreover, "there is a distinction between what an [ALJ] must consider and what the [ALJ] must explain in the disability determination."  Id.  The ALJ need not list out each factor she considered in her decision.  Generally, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome of the case."  Id.

Thus, the ALJ was not required to explicitly list out each factor from 20 C.F.R. §§ 404.1527(d) and 416.927(d) when weighing LMFT Grotke's "other source" opinion.  Rather, she was required to sufficiently explain the weight she gave the opinion, such that the claimant or a subsequent reviewer could follow the ALJ's reasoning.

The record in this matter includes LMFT Grotke's visit notes from November 2014 through February 2015 (AT 379–83), and a check-box medical source statement from September 10, 2014.  (AT 428–32.)  In the medical source statement, LMFT Grotke indicated that plaintiff had a fair ability to maintain concentration, attention and persistence; a fair to poor ability to interact appropriately with the public; and a poor ability to interact with supervisors.  (AT 431.)  All other abilities were checked as fair, good, or unlimited.  (Id.)

The ALJ gave LMFT Grotke's opinion little weight "because she is not an acceptable medical source."  (AT 31.)  Also, after noting that LMFT Grotke opined that plaintiff had fair to poor ability to interact socially, the ALJ pointed out that "during the course of [LMFT Grotke's] counseling sessions in 2014 and 2015, she assessed the clamant with a GAF score of 51-60,

---

[7] As explained above, the factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. See 20 C.F.R. §§ 404.1527(d), 416.927(d).

which indicates moderate symptoms or moderate difficulty in social, occupational or school functioning." (Id.) The ALJ's reasoning here demonstrates that she found LMFT Grotke's objective findings of moderate symptoms do not support a finding of poor ability to interact socially. Additionally, the ALJ found that plaintiff's "ability to attend college level courses is contrary to poor/fair concentration abilities." (Id.) The ALJ's conclusions are supported by substantial evidence in the record. As explained, the GAF score assessed by LMFT Grotke was consistently 51-60. (AT 379–83.) Furthermore, at the hearing plaintiff testified that since the fall of 2013 he had completed approximately 85 college credits with a grade point average of roughly 3.1. (AT 42.) Thus, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for giving LMFT Grotke's opinion little weight. What is more, the ALJ did not completely reject this opinion, as she accounted for plaintiff's mental impairments in the RFC, as explained above. (See AT 22.)

Therefore, the ALJ did not err by failing to explicitly list out all of the factors she considered when weighing LMFT Grotke's opinion because the ALJ sufficiently explained the weight she gave to the opinion, providing specific and legitimate reasons, supported by substantial evidence in the record. See SSR 06-03p; see also Lester, 81 F.3d at 830–31.

### iii. Opinion of Mihaela Hasse, MD

Plaintiff asserts that the ALJ provided legally inadequate reasons for rejecting Dr. Hasse's opinion that plaintiff would experience temporary disability from August 10, 2015 until December 10, 2015. (ECF No. 19 at 24; see AT 426.) Yet, a conclusory statement of disability is not binding on the Commissioner. As the SSA's regulations explain:

> We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. § 404.1527(d)(1). "In addition, the regulations give more weight to opinions that are explained than to those that are not." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(3)).

10

Here, Dr. Hasse filled out a check-box form on August 10, 2015 indicating that plaintiff was temporarily disabled until December 10, 2015. (AT 426.) Dr. Hasse did not explain why the plaintiff was disabled, rather she listed a diagnosis of "pelvic hardware – chronic pain; sciatic." Id. The ALJ gave this opinion little weight, because it "is too general to be of assistance in this determination and indicates that the limitations are temporary. . . . [and because it] is also inconsistent with the medical evidence, which indicates that the claimant made good recovery after his hip surgery, he has had negative straight leg raise testing, and he does not require an assistive device for walking." (AT 25.)

The ALJ was not required to give this opinion any weight, as it was conclusory and unsupported. However, the ALJ did provide several reasons for rejecting Dr. Hasse's opinion, which are supported by substantial evidence in the record. First, Dr. Hasse's own conservative treatment is inconsistent with a finding of disability: on July 1, 2015, she recommended over-the-counter ibuprofen for plaintiff's pain (AT 396) and on August 10, 2015, she prescribed a knee brace for four months, directing plaintiff not to use it around the clock. (AT 394.)

Moreover, the record demonstrates good recovery after plaintiff's 2010 surgery: a post-operative x-ray on October 5, 2010 displayed stable healing bilateral sacroiliac fractures, with stable surgical screws in stable alignment without evidence of complication and a stable left L5 transverse process fracture (AT 563); on the same day, plaintiff also reported that his pain was much improved, with some numbness in his foot (AT 560); on December 7, 2010, plaintiff reported walking, and Dr. Brian Kirtamura observed that the sacral fracture was healing without complication and recommended that plaintiff ease back into normal activities (AT 571). Importantly, on March 8, 2011 plaintiff walked with minimal discomfort, presented a pain-free left hip with full range of motion, scored a 5 out of 5 on all strength tests, and had a negative straight leg raise test on both sides. (AT 578.) Finally, plaintiff testified that he can walk between forty minutes and an hour before needing a break (AT 44), and there is no mention in the record of him needing the assistance of a cane or walker.

Thus, the ALJ did not err in giving little weight to Dr. Hasse's opinion because the ALJ was not bound by Dr. Hasse's unsupported and unexplained opinion that plaintiff was temporarily

disabled. See 20 C.F.R. § 404.1527. What is more, to the extent that the ALJ was required to weigh Dr. Hasse's opinion, she provided clear and convincing reasons to reject this opinion, supported by substantial evidence in the record. See Lester, 81 F.3d at 830–31.

                iv.        Opinion of James Nichol, MD

Plaintiff argues that the "ALJ's failure to give specific and legitimate reasons, or any reasons, for rejecting Dr. Nichol's treating course opinions is reversible legal error." (ECF No. 19 at 24.) However, "[when] interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." Id.

Here, in a treatment note on January 1, 2014, Dr. Nichol reported that he "[f]illed out temporary disability paperwork: 6 months duration. [Plaintiff] says he is in school again." (AT 410.)[8] The ALJ did not explicitly reference this entry in her decision. However, this statement is not a viable medical opinion. While Dr. Nichol claims that he filled out disability paperwork, he does not provide either his reasoning or the medical basis of plaintiff's alleged temporary disability. As a single, conclusory statement among hundreds of pages of medical records, this remark is neither significant nor probative. See Howard ex rel. Wolff, 341 F.3d at 1012.

Even assuming that the ALJ erred by failing to discuss Dr. Nichol's report, such error is harmless. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). In determining which physical limitations were warranted in the RFC determination, the ALJ relied upon substantial evidence in the record (see AT 23) including, but not limited to: indications that plaintiff had healed well from his 2010 surgery, had full range of motion, and negative straight leg raise tests by March of 2011 (AT 560, 563, 571, 578); assessment that plaintiff's hepatitis C

---

[8] Plaintiff also refers to this same statement, which is found in treatment notes on July 10, 2014, as a second opinion of disability. (ECF No. 19 at 23–24.) However, Dr. Nichol only reentered this statement on July 10, 2014 as part of plaintiff's history from his January 1, 2014 visit. (See AT 406.) It is not an independent entry of additional temporary disability.

was stable in March 2015 (AT 389); plaintiff reporting of "no major complaints," "no fatigue issues," and that "[h]e is working out and feels great" in June 2015 (AT 388); as well as conservative treatment (ibuprofen and a knee brace) for sciatica and knee pain in 2015 (AT 394, 396). The single report from Dr. Nichol does not outweigh this evidence.

Therefore, because the physical limitations in the ALJ's RFC determination are based upon substantial evidence in the record, the ALJ's failure to discuss Dr. Nichol's report was harmless error, at most. See Molina, 674 F.3d at 1111.

    2. *Whether the ALJ improperly discounted lay testimony*

Plaintiff argues that the ALJ failed to give even minimally adequate reasons for rejecting the testimony of plaintiff and his lay witness William A. Anderson. (ECF No. 19 at 13.) In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

13

1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

### i. Plaintiff's credibility

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of physical and mental impairments. Indeed, the ALJ limited plaintiff to "light work with limited social interaction" as detailed in the RFC. (AT 22, 24.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

### a. Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, when discounting plaintiff's credibility, the ALJ properly relied in part on inconsistencies between plaintiff's alleged severe impairments and the objective medical evidence in the record. (See AT 22–24.) In particular, the ALJ pointed out evidence, detailed above, demonstrating that plaintiff's physical impairments had continually improved, leaving him with full range of motion, normal strength tests, and negative straight leg raise tests. (See AT 388, 389, 560, 563, 571, 578.) As far as plaintiff's mental limitations were concerned, the ALJ also relied on objective evidence in the record, such as treatment notes from June and August

14

2013 that plaintiff's mood, affect, judgment and insight were each normal. (AT 23, 411, 423.) The ALJ also cited and relied on Dr. Whitten's January 21, 2015 observations that plaintiff was obviously intelligent; had a cooperative attitude; his thought processes were relevant and goal directed; he was alert and oriented to person, place, and time; he recalled 4/4 objects initially and 0/4 objects after five minute delay; he successfully completed serial sevens and calculations; his concentration and insight was fair; but his judgment in social situation was "somewhat impaired" (AT 24, 370–75).

### b. Failure to seek treatment

Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

Here, when assessing plaintiff's credibility, the ALJ pointed out that plaintiff had "declined hepatitis C treatment, while incarcerated" (AT 23), which is supported by medical evidence in the record (AT 340, 343). Plaintiff did not attempt to explain why he refused this treatment, thereby making plaintiff's refusal a proper consideration when assessing plaintiff's credibility.

### c. Conservative treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). Here, the ALJ cited the conservative treatment plaintiff received for his pain, including ibuprofen and a knee brace (AT

23), which is supported by substantial evidence (AT 394, 396). The record is also replete with other forms of conservative treatment: exercise (AT 341, 396, 406); physical therapy (AT 396); and herbal supplements (AT 406, 409).

### d. Daily Activities

Finally, substantial evidence supports the ALJ's finding that plaintiff's daily activities are inconsistent with his allegations of disabling symptoms and limitations. (AT 24.) "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here the record demonstrates that plaintiff was attending college at the time of the hearing (AT 42); was able to exercise to reduce his back pain (AT 388); and was able to shop for food and clothes, and do his own laundry (AT 42, 285–291).

To be sure, the record also contains some contrary evidence—such as plaintiff's homeless status, his issues with larger males, and his struggles with computers—suggesting that plaintiff's activities are more limited. (AT 36, 39, 40.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's

interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

### ii. William Anderson's credibility

"[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and citation omitted). Here, the ALJ observed:

> The claimant's friend, William Anderson, submitted a Third Party Function report, which contains information similar to the responses provided in the claimant's testimony and reports. His report has been considered and weighed in this determination.

(AT 22.) In addressing Mr. Anderson's testimony the ALJ maintained that Mr. Anderson essentially echoed plaintiff's own testimony. As discussed above, the ALJ already provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally germane to Mr. Anderson's third-party testimony. As such, any error in not explicitly re-stating, or incorporating by reference, the reasons given for discounting plaintiff's testimony with respect to this third-party was harmless and remand is not warranted. See Molina, 674 F.3d at 1115-22.

3. *Whether the ALJ's RFC was without substantial evidence support and whether the case should be remanded for payment of benefits.*

For the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. As such, plaintiff's argument that the RFC is without substantial evidence support is not well taken. Moreover, since there are no grounds to remand this case, there are no grounds to remand for payment of benefits.

17

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 24) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

Dated: September 19, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

14/ss.hiligas. order re MSJ